## COCHRAN *v.* BLOUT.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 116. Argued December 12, 13, 1895. — Decided March 2, 1896.

When the plaintiff in a bill in equity alleges facts material to his recovery, and the defendant in his answer denies them under oath, the burden of proof is thrown upon the plaintiff.

ON July 21, 1890, George W. Cochran filed, in the Supreme Court of the District of Columbia, a bill of complaint against Isaac L. Blout, trustee, James P. Ryon, and Julius Lansburgh, whereby he sought a decree, in the nature of a decree for specific performance, to compel Lansburgh to convey to him an undivided one third equitable interest owned by Lansburgh in a certain square or tract of land in the city of Washington, and Blout and Ryon to join in said conveyance as holders of the legal title.

The facts out of which the controversy grew were substantially these:

By virtue of certain deeds and agreements, not necessary here to state, on June 1, 1886, the legal title to square 980 in the city of Washington became vested in Isaac L. Blout, who executed a cotemporaneous declaration of trust, wherein he acknowledged that he held said square in trust for the following persons: For himself, one sixth; Julius Lansburgh, one third; Henry T. Tracy, one sixth; Morris Clark, one sixth, and the firm of Ryon & Tracy, composed of James P. Ryon and Burr R. Tracy, one sixth — each of said parties having paid his proportional part of the purchase money; and for the following purposes: The land was to be subdivided in such manner as might be agreed on by the parties in interest, such agreement to be expressed by the written signature of James P. Ryon, and to be sold either in whole or in part upon such terms as should be agreed upon by the parties in interest, such agreement to be expressed by the written signature of James P. Ryon, and upon the trust to convey the ground so sold to the purchaser or purchasers, and to pay over unto the parties in interest, according to their respective interests at the time of sale, or, if the parties in interest should so desire, to apply said proceeds of sale to the payment of certain described incumbrances on said tract.

In January, 1889, Lansburgh put the said square, with other property wholly his own, into the hands of Joseph T. Dyer, a real estate broker in the city of Washington, for sale at and for the sum of twenty-eight cents per square foot. On September 26, 1889, Dyer gave to George W. Cochran, the plaintiff, a paper in the following terms:

"WASHINGTON, D. C., *Sept.* 26, 1889.

"Received of George W. Cochran, Esq., a deposit of three hundred ($300) dollars, to be applied in part payment of purchase of all of square 980, sold him for 28 cents per square foot on following terms: One third cash, bal. in 1, 2, and 3 years, with interest at 6 per cent, payable semi-annually; property sold as a good title or no sale; all taxes to be paid to Nov. 30th, 1889. The purchaser is required to make full settlement in accordance with terms of sale within thirty

days from this date or deposit will be forfeited. Convey-. ancing at purchaser's cost.

· " J. T. Dyer,
" *Agent for Julius Lansburgh and others.*"

On that day Dyer gave a written notice of the sale to Lansburgh, and on the next day to Ryon & Tracy, who approved the same. The notice and approval were in form as follows:

· " Washington, D. C., *Sept.* 26, 1889.

" Messrs. Ryon & Tracy. ·

" Dear Sirs : I have sold square 980 to George W. Cochran, Esq., for twenty-eight cents per square foot, one third cash, balance in 1, 2 and 3 years, 6 per cent, and have received a deposit of $300 to bind the sale; property sold as a good title. J. T. Dyer.

· " Sale approved : Ryon & Tracy, Sept. 27, 1889.

" Approved : Julius Lansburgh."

There was no third person present when Lansburgh signed this paper, and one of the disputed questions. in this case is whether Lansburgh's approval was unconditional, or upon the verbal condition that it was not to bind him until concurred in by other parties in interest. ·

Blout and Clark, each holding a one sixth interest in the property, declined to approve the sale to Cochran. The firm of Ryon & Tracy, owning a one sixth interest, and Henry C. Tracy, owning a one sixth interest, were willing to carry out the sale as made. Lansburgh, having learned that some of the parties in interest refused to acquiesce in the sale, declined to convey his share. ·

Subsequently, on November 14, 1889, Cochran filed a bill against Blout and all the parties in interest, seeking to have specific performance of the contract of sale made by Dyer and approved by Ryon & Tracy and Lansburgh. Blout and Clark filed answers, alleging that they had not authorized Lansburgh or Dyer to make the sale to Cochran, and that they had never approved or·ratified the same.

Ryon & Tracy and Henry C. Tracy conveyed their respective interests in the square to Cochran. Evidence was taken, and Cochran, finding that he could not maintain his bill against Blout or Clark, dismissed his bill as against them; and subsequently, on July 21, 1890, filed the present amended bill.

Lansburgh answered, alleging that he had approved the sale with the understanding with Dyer that the latter should obtain the consent of Blout before his own approval should take effect. Blout answered, denying the right of Dyer to make the sale, and asserting his ignorance of other matters alleged in the bill.

James P. Ryon answered that he and Tracy had assigned and transferred to Cochran their interests in the trust property held by Blout, and expressing his willingness to sign a deed, to be executed by Blout, trustee, conveying Lansburgh's undivided one third interest in said square.

Issue was duly joined on these answers, and testimony was taken. The case was heard in the special term of the Supreme Court of the District of Columbia, and a decree was rendered for specific performance by Lansburgh as to his one third interest in the square. In the general term, on appeal by Lansburgh, the decree of the special term was reversed and the bill dismissed. From this decree of the general term Cochran appealed to this court.

*Mr. Samuel Maddox* and *Mr. A. S. Worthington* for appellant.

*Mr. A. B. Duvall* and *Mr. Leon Tobriner* for appellees.

Mr. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

In order to be able to enforce specific performance by Lansburgh, as prayed for in his amended bill of complaint, Cochran must show that, at the time he made the agreement with Dyer, Lansburgh either held himself out as the owner of the

entire square, or as having authority from his coöwners to sell the whole of it.

It is a conceded fact that Lansburgh was the owner of but one third interest in the land concerned, and it is clear that, on September 26, 1889, Dyer was aware that there were other owners. This appears from the fact that prior to that date Dyer reported to Lansburgh that one Holtzman had made a proposal to buy a part of the square, and had been told by Lansburgh that he was not the sole owner of the property, and would have to see others. The fact that the paper given by Dyer to Cochran was signed by the former as agent for Lansburgh and others was sufficient to show that Dyer was aware that Lansburgh was not the sole owner, and was notice to Cochran of that fact.

There remains, then, the other alternative. Did Lansburgh claim to have authority from his coöwners to act for them in selling the whole? If he did so, and if Dyer, acting upon such a representation, contracted, as agent for the owners, with Cochran for a sale of the entire tract, then it may be conceded that Cochran, upon compliance by him with the terms of the contract, might, on learning that some of the owners had not authorized Lansburgh to sell their interests and refused to be bound, hold Lansburgh to make good his representations by conveying his individual interest in the land sold.

In his amended bill of complaint Cochran charges that Lansburgh claimed to act under authority from the other owners in placing the lands in the hands of Dyer for sale. Lansburgh, in his answer, denies that he claimed to act for the others, and asserts that he fully informed Dyer that he would have to secure the approval of the other owners; that Dyer acted upon that information and endeavored vainly to procure their assent to the sale, and that his, Lansburgh's, approval of the sale was conditional on such assent.

In the issue thus formed as to this question of fact the burden is upon Cochran. He must overcome the responsive effect of the sworn answer, and satisfy a court of equity that the facts were as alleged by him. And this we think he has failed to do.

The testimony was conflicting, and our examination of it leads to the adoption of the conclusion of the Supreme Court of the District, and its decree dismissing the bill is accordingly

*Affirmed.*