## WARD v. WALKER et al.

(Court of Civil Appeals of Texas. Galveston.
April 25, 1913. Rehearing Denied
May 29, 1913.)

1. TRIAL (§§ 155, 156*)—DEMURRER TO EVI-
DENCE—EFFECT.

The effect of a technical demurrer to the
evidence by defendants in a proceeding, prac-
tically obsolete, is to admit the truth of plain-
tiff's evidence and every legitimate inference
to be drawn therefrom and to withdraw the
case from the jury if the trial is by jury, ex-
cept where there is a question of unliquidated
damages to be passed on, and to call for the
judgment of the court as to plaintiff's right to
recover, and if the demurrer is joined in by
plaintiff there is nothing to be done except for
the court to pass judgment on the facts prov-
ed, saving the question of damages when un-
liquidated.

· [Ed. Note.—For other cases, see Trial, Cent.
Dig. §§ 346, 352–356; Dec. Dig. §§ 155, 156.*]

2. TRIAL (§ 418*)—DEMURRER TO EVIDENCE—
WAIVER.

Where, at the close of plaintiff's case, de-
fendants' counsel demurred to the evidence and
requested that judgment be rendered in favor
of defendants, but at the close of the argu-
ment the court reserved its decision and order-
ed defendants to introduce their testimony,
which was done without objection by either
party, and at the close of all the evidence the
court rendered judgment for defendants, the
application for judgment at the close of plain-
tiff's case was not technically a demurrer to
the evidence but rather a motion for judgment
which was waived by the subsequent introduc-
tion of testimony.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. § 981; Dec. Dig. § 418.*]

3. SPECIFIC PERFORMANCE (§ 10*) — COTEN-
ANTS—CONTRACT BY PART—ENFORCEMENT.

Where only part of several tenants in
common signed a contract for the conveyance
of their interests in the land, notwithstanding
it was originally contemplated that all should
sign and that the purchaser should take the
whole, the contract was nevertheless suscepti-
ble of specific performance as to the interests
of the parties who signed with a proportionate
statement of the price as to the interests not
included.

[Ed. Note.—For other cases, see Specific Per-
formance, Cent. Dig. §§ 20–25, 50; Dec. Dig. §
10.*]

4. TENANCY IN COMMON (§ 44*) — INTERESTS
OF COTENANTS—CONTRACT OF SALE.

Since each of several tenants in common
are entitled to sell their interests without re-
gard to the wishes of the others, those signing
a contract of sale are legally bound thereby,
though some of them refused to join therein.

[Ed. Note.—For other cases, see Tenancy in
Common, Cent. Dig. §§ 133, 134, 136, 137;
Dec. Dig. § 44.*]

5. HOMESTEAD (§ 84*)—TENANCY IN COMMON
—RESIDENCE ON COMMON PROPERTY.

Where a tenant in common lived with his
father on the common property, both owning
an undivided interest therein, and later brought
his wife to the home where they all lived un-
til after a contract had been made to sell the
same, in which the wife did not join, when the
husband and wife removed to a rented farm
with an intention of building a residence for
a home on the common property, but had made
no active preparations to do so, the property
was their homestead under the rule that a ten-

ant in common may acquire a homestead right
in common property.

[Ed. Note.—For other cases, see Homestead,
Cent. Dig. §§ 121, 122; Dec. Dig. § 84.*

For other definitions, see Words and Phras-
es, vol. 4, pp. 3327–3336; vol. 8, pp. 7679,
7680.]

6. HOMESTEAD (§ 118*)—CONTRACT OF SALE—
HUSBAND AND WIFE—JOINDER OF WIFE.

A contract for the sale of a homestead of
husband and wife, in which the wife did not
join, is void and did not become valid and en-
forceable by their suddenly ceasing to occupy
their home on the land; no other home having
been acquired.

[Ed. Note.—For other cases, see Homestead,
Cent. Dig. §§ 192, 195, 203–209, 216, 217;
Dec. Dig. § 118.*]

Pleasants, C. J., dissenting.

Appeal from District Court, Jackson Coun-
ty; John M. Green, Judge.

Suit by A. P. Ward against W. G. Walker
and others for specific performance of a con-
tract for the sale of land. Judgment for de-
fendants, and plaintiff appeals. Reversed
and remanded in part, with instructions.

L. C. McBride, of Dallas, and J. O. Row-
lett, of Edna, for appellant. W. W. McCrory
and Jno. T. Vance, both of Edna, for appel-
lees.

REESE, J. This is a suit for specific per-
formance of a contract for the sale and convey-
ance of land brought by A. P. Ward against
W. G. Walker, L. M. Walker, C. K. Walker,
and his wife, Riller Walker, C. W. Walker,
and A. R. Walker. The action is based upon
the following contract:

"The State of Texas, County of Jackson.

"This memorandum of an agreement enter-
ed into this the twenty-second day of June,
nineteen hundred and nine, A. D., between
W. G. Walker, of the aforesaid county and
state, his heirs, C. K. Walker, A. R. Walker,
C. W. Walker, and L. M. Walker, hereinafter
styled party of the first part; and A. P.
Ward, hereinafter styled party of the sec-
ond part, witnesseth: That the said party
of the first has agreed to sell, and does
sell, and the said party of the second part
agrees to buy, and does buy, all of right,
interest and title in the land hereinafter de-
scribed upon the conditions hereinafter men-
tioned. The land being all that certain tract,
piece or parcel of land, situated in Jackson
county, Texas, owned by the party of the first
part, and lying west of the West Carancahua
bayou and south of the St. Louis, Browns-
ville & Mexico Railroad, and bounded by
the holdings of the following: On the east
by Clint Morrow and Arthur Stayton, on the
north by Alfred Bolling, on the west by L.
Ward and M. L. Pierce, and on the south
by L. Ward; containing 628½ acres, more or
less. The purchase price of this land is
$17.00 (seventeen dollars) per acre. One
hundred dollars of the sum has this day been

paid by the party of the second part to the party of the first part as earnest money, and which the said party of the first hereby acknowledges receipt of. Two thousand dollars of the sum is to be paid on delivery of the deed properly signed. Three thousand dollars to be paid in six months from date of delivery of deed, and the balance in equal payments, payable on or before the dates of one, two and three years, dating from the aforesaid payment of three thousand dollars, subject to the following conditions, and bearing interest subject to the hereinafter stated conditions, from the date the party of the second part is given possession of the premises, or land. The party of the second part agrees to assume an indebtedness of $2.000.00 on the premises with interest on the same at 8% per annum. The above $2,000.00 with interest at 8% per annum is to be part of the payment of the total sum and the party of the first part agrees to accept the note of the party of the second part of $2,000.00, bearing interest at 6% per annum, payable in two years. The intention being to pay the party of the first part an average of 7% per annum, payable on or before the aforesaid dates, according to the agreement above stated.

"It is further agreed and understood that the said party of the first part is to have prepared and submitted to the said party of the second part an abstract of the title to the aforesaid tract of land, and the said party of the second part is to have a reasonable time for examination of the same by his attorney, and if a defect or defects are discovered in the title they shall be pointed out to the said party of the first part and the said party of the first part shall have a reasonable length of time in which to remove or cure same. It is further agreed and understood that if a defect or defects in the title are pointed out to the said party of the first part, the said party of the first part shall make due and diligent effort to remove or cure same.

"It is further agreed and understood that when the title is shown by the abstract to be a good merchantable one, and is delivered to the party of the second part, the said sum of $2,000.00 is to be paid by the said party of the second part to the said party of the first part, and the earnest money mentioned herein is to be a part of the same, and that for the other sums herein mentioned the party of the second part agrees to execute and deliver to the said party of the first part his notes, subject to the herein mentioned conditions, and secured by a lien upon the land herein mentioned, when the said party of the first part shall execute and deliver unto the said party of the second part a good and sufficient deed to said hereinbefore described premises, containing general covenants of warranty.

"It is also agreed and understood that if the title to said land prove defective on examination by the said party of the second part, the said party of the first part shall return to the said party of the second part the earnest money herein mentioned on demand.

"It is further agreed and understood that the said party of the first part is to give possession of the aforesaid premises to the said party of the second part on or before the first day of January, 1910.

"This agreement is to be held in escrow by A. C. Joines & Bro., La Ward, Texas.
"[Signed]    Party First Part:
              "W. G. Walker.
              "L. M. Walker.
              "C. K. Walker.
              "C. W. Walker.
          "Party Second Part:
              "A. P. Ward."

C. K. Walker and Riller, his wife, set up as a defense that at the time of the execution of the contract the undivided interest in the land embraced in the contract owned by said C. K. Walker was their homestead, and that the said Riller did not join therein, and the contract was void as to the interest of said C. K. Walker. A. R. Walker, one of the joint owners named in the body of the contract, did not sign the same, and denied that he was bound, and all the defendants set up as a defense to the action that the contract was not divisible, and therefore, as it could not be specifically enforced as to the whole land and all the joint owners, it could not be so enforced as to the portions of the land owned by those of the defendants who executed it. The homestead claim of C. K. Walker and wife was denied by plaintiff, and he also undertook by his pleadings to show authority in W. G. Walker to execute the contract for A. R. Walker. The case was tried without a jury. The court, as shown by the conclusions of law incorporated in the judgment, held that the contract was not binding upon C. K. Walker on account of the defense of homestead set up by himself and wife, and that the contract was indivisible and should not be specifically enforced as against any of the defendants, and rendered judgment for the defendants. Plaintiff moved for a new trial, which was overruled, and brings the case to this court by appeal.

The facts are as follows: The contract set out was executed by the parties whose signatures are shown, as alleged in the petition. A. R. Walker, one of the joint owners of the land, and who is named as one of those contracting in the body of the instrument, refused to sign. The 654-acre tract of land involved was, at the time of the date of said contract, owned, a definite 150 acres thereof in a certain proportion, and the remainder in a certain other proportion by the defendants as follows:

The defined 150 acres of the tract as de-

159 S.W.—21

scribed in paragraph 3 of plaintiff's amended petition owned as follows:

A. R. Walker, undivided...................9/16
W. G. Walker, undivided...................4/16
C. K. Walker, undivided...................1/16
C. W. Walker, undivided...................1/16
L. M. Walker, undivided...................1/16

The remainder of the land in controversy, other than said 150 acres, owned as follows:

W. G. Walker, undivided...................8/16
A. R. Walker, undivided...................2/16
C. K. Walker, undivided...................2/16
C. W. Walker, undivided...................2/16
L. M. Walker, undivided..:.................2/16

The facts with regard to the homestead claim of C. K. Walker and wife are as follows: W. G. Walker is the father of the other defendants (except the said Riller). He had been, at the time of the execution of the contract, for many years making his home upon the land with his unmarried daughter, Miss L. M. (Lilly) Walker, having a residence house and improvements connected therewith. There was no other residence building on the land. C. K. Walker, who was 30 years old, had been living in the house also, with his father and sister, for many years and farming some of the land. In March, 1909 (the contract was executed in June, 1909), C. K. Walker married his present wife and took her to live with himself, his father and sister, in the home referred to, and they were living and making their home there at the time the contract was executed. The wife was not consulted about the matter and did not sign the contract. The evidence in support of the homestead claim authorizes the conclusion that for two or three years before the contract was made, on account of his father's failing health, C. K. Walker was in control of the place; his father having turned over the control to him. The four mentioned lived on the place as one family. This was the situation at the time the contract was signed. Shortly thereafter, on account of some disagreement between Mrs. Riller Walker and her sister, Miss Lilly Walker, she and her husband moved off of the place, and they have since lived on rented land in the neighborhood. C. K. Walker owned no land except his undivided interest of about 75 acres of this tract. He has had the intention of building a residence for a home on this land, but has made no active preparations to do so, being deterred by this lawsuit. There was no understanding by the parties to the contract, or any of them, that it was not to be binding upon any of them unless all were bound. It was understood by Ward that the Walkers owned undivided interests in the land.

After the execution of the contract W. G. Walker had an abstract of title prepared, which he turned over to appellant, who in turn sent it to his attorney for examination, for which he paid him a fee. The land was also surveyed by the defendants, the Walkers, who made the contract, looking to the consummation of the sale. Appellant testified that this was after it had been learned that A. R. Walker would not sign, but W. G. Walker denies this and says that it was before. We must conclude, in support of the judgment, in so far as this fact is material, that W. G. Walker was correct. A. R. Walker had, before the contract was signed, written to his father expressing a willingness to sell, but we find that W. G. Walker had no specific authority to execute this contract for A. R. Walker, and that in fact it was not intended or contemplated by either himself or appellant that he should do so, but that A. R. Walker should execute for himself.

The judgment contains the following recital: "And, at the conclusion of the introduction by plaintiff of his evidence in chief, the defendants urged a demurrer to said evidence and a request that judgment be rendered on said evidence in favor of the defendants, which demurrer and request were then and there by the court overruled and denied. Thereupon the cause proceeded by introduction of testimony by defendants and rebuttal testimony of plaintiffs," etc.

It is assigned as fundamental error in the brief that the court erred in not rendering judgment for plaintiff upon overruling defendants' demurrer to the evidence. The record, as shown by the statement of facts, with regard to this matter shows the following: "Plaintiff rests. At this juncture defendants' counsel, Mr. W. W. McCrory, argued and urged to the court that defendants were entitled to judgment on the testimony as introduced. Argument of counsel for defendants and plaintiffs followed. Thereupon the following colloquy occurred: 'The Court: It is a very close question; I reserve my decision on that; go ahead and introduce your testimony. Mr. McBride: Does this point arise on demurrer to the evidence? Mr. McCrory: Yes, the question arises on demurrer to the evidence. Mr. McBride: I want the records to show that fact.' "

[1] The defendants then proceeded without objection with the introduction of their testimony. The effect of a technical demurrer to the evidence, on the part of the defendants (which is practically obsolete), is to admit the truth of plaintiff's evidence and every legitimate inference to be drawn therefrom and to withdraw the case from the jury, if the trial is with a jury, except where there is a question of unliquidated damages to be passed upon, and to call for the judgment of the court as to plaintiff's right to recover. If the demurrer is joined in by the plaintiff, there is nothing to be done except for the court to pass judgment on the facts thus shown (saving the question of the damages when unliquidated). G., H. & S. A. Ry. Co. v. Templeton, 87 Tex. 42, 26 S. W. 1066; Eberstadt v. State, 92 Tex. 97, 45 S. W. 1007.

[2] The difference between a technical de-

murrer to the evidence and a motion to instruct a verdict, or if the case is tried without a jury a motion to render judgment, is shown in the cases cited. Although counsel for defendants called his action a demurrer to the evidence, and it is so called in the judgment, the record shows that it was not so intended or treated. The court did not rule upon it at the time, but withheld his opinion, and directed the defendants to proceed with their evidence, which was done without objection from either party. Neither party insisted upon what would be his clear rights under a demurrer to the evidence. There was no question of unliquidated damages, and, if appellant had desired to have the matter treated strictly as a demurrer to the evidence, he should have insisted upon judgment on the demurrer and objected to the introduction of any evidence by the defendants. We are persuaded that the term "demurrer to the evidence" was used inadvertently by the parties and the court. The error complained of was not embraced in the motion for a new trial, nor the assignments of error in the trial court. This would not have been necessary in case of fundamental error, but is at least significant as supporting our view that the appellant did not consider it, in fact, a technical demurrer to the evidence. He waived his right to have it so treated by making no objection to the introduction of testimony by defendants. The assignment is overruled.

[3] By appropriate assignments of error appellant complains of the holding of the court that the contract was indivisible and could not be enforced against any of the grantors because it was not binding upon all the joint owners of the land. There was no understanding or agreement by any of the parties to the contract that it should not be binding upon any of those of the Walkers who signed it or upon the grantee Ward, unless A. R. Walker signed, and a fortiori no such understanding if the execution of the same by C. K. Walker should be held to be void on account of the homestead claim of his wife. The holding of the trial court rests upon the proposition that the agreement was to sell all of the land or none, and that as the refusal of A. R. Walker to sign, and the homestead claim of C. K. Walker, rendered it impossible to carry out the contract as to the whole of the land, and all of the joint owners, those of the joint owners who were bound could not be compelled to sell that portion of the land which they owned (which was an undivided 436 acres about) with a proportionate statement of the purchase price. We do not find that this question has ever been decided by any of the appellate courts of this state. We cannot agree with appellant that the case of Hazzard v. Morrison (Sup.) 143 S. W. 142, is entirely in point. In that case Kahler, as agent of Mrs. Hazzard and the executor of the Lawrence estate, contracted to sell, as agent of Mrs.

Hazzard, 75 feet, and as agent of the Lawrence estate 25 feet, of a certain lot in the city of Dallas which was 100 by 90 feet in area. Mrs. Hazzard owned a specific 75 feet and the Lawrence estate a specific 25 feet. There was no tenancy in common and no undivided interest. The contract was not binding as to the Lawrence estate for want of authority in the executor to sell, and the question presented was whether Mrs. Hazzard could be compelled to perform the contract as to the specific 75 feet owned by her. It was held that she could. Although the facts are different, the reasoning of the court is in part applicable to the facts of the present case, and the court in support of its decision cites several cases in which the contract of sale was by some of several tenants in common, as in this case.

We find that the decisions of other jurisdictions are not harmonious. In Cochran v. Blout, 161 U. S. 350, 16 Sup. Ct. 454, 40 L. Ed. 729, which is the only case cited by appellees on the point, the facts were that one Lansburgh placed with Dyer, a real estate broker, for sale, a piece of ground which belonged to himself and four others, each owning an undivided one-sixth, except Lansburgh, who owned one-third. Dyer made a contract of sale to Cochran, signing the contract as agent for Lansburgh and others. The contract was approved by all of the owners except Blout and Clark, who had not authorized the sale. Lansburgh, learning that some of the parties refused to acquiesce, refused to carry out the contract, alleging that he had approved the sale with the understanding that Dyer should obtain the approval of Blout. This suit was to compel Lansburgh to convey his interest; the other parties who had approved the sale having voluntarily conveyed their interest. It was held that, in order to compel specific performance by Lansburgh as to his interest, the plaintiff must show either that Lansburgh, when he placed the property with Dyer to sell, had represented that he was the owner of the entire property or that he was authorized by the other owners to sell the whole of it. Failing to show either of these facts, the bill was dismissed. No authorities are cited in support of the opinion. In the case of Jackson v. Torrence, 83 Cal. 521, 23 Pac. 695, specific performance against the husband was refused in case of a contract for the sale of a hotel, furniture, and good will, which was owned by the community and the wife as her separate estate in undivided interest. The contract was signed by both parties, but its execution by the wife was invalid to bind her. It was held upon the facts that it was not the intention of the husband to sell the property except as a whole, a conclusion entirely justified by the circumstances. The case of Olson v. Lovell, 91 Cal. 506, 27 Pac. 765, also a California case, is more nearly in point with the present case. Decree for specific perform-

ance against one of two cotenants was refused. These are the only cases which we have been able to find which can be said to tend to support the contention of appellees and the conclusion of the trial court. It is noticeable that Cochran v. Blout, supra, is cited by our Supreme Court, along with other cases which entirely support appellant's right to specific performance against appellees, in Hazzard v. Morrison, supra.

We are unable to see anything unconscionable, inequitable, or unjust in requiring the appellees to perform, so far as they are able, the contract which they have deliberately made. The legal effect of the contract was that each of them for sufficient consideration bound himself to sell and convey the land, so far as he was able; that is, his undivided interest.

[4] Each had the right to sell his interest without regard to the wishes of the others. Naturally it was supposed that all would join and thus effectuate a sale of the whole, but there was no condition attached to the contract or understood by the parties that none should be bound unless all were. The following authorities support the proposition contended for by appellant that he is entitled to have the contract specifically performed by appellees as to the undivided interest owned by them, with a corresponding abatement of consideration. Keator v. Brown, 57 N. J. Eq. 600, 42 Atl. 278; Melin v. Woolley, 103 Minn. 498, 115 N. W. 654, 946, 22 L. R. A. (N. S.) 595; Tillery v. Land, 136 N. C. 537, 48 S. E. 825; Campbell v. Hough, 73 N. J. Eq. 601, 68 Atl. 759; Tobin v. Larkin, 183 Mass. 389, 67 N. E. 340; Meek v. Walthall, 20 Ark. 648. The case last cited from the Supreme Court of Arkansas is in all respects on all fours with the present case. See, also, 2 Story, Eq. Juris. (13th Ed.) § 779. The second, third, fourth, sixth, seventh, and eighth assignments of error must be sustained.

[5] By the fifth assignment of error appellant complains specially of the refusal of the court to enforce the written contract against C. K. Walker on the ground that his wife had not joined in the conveyance, and his interest in the land was his homestead. The facts upon which the homestead claim is based have been fully stated in our fact conclusions. A majority of the court is of the opinion that the residence of C. K. Walker and his wife in the house with his father and sister, "all living as one family," and the circumstances shown of his general control of the premises, were sufficient to constitute the undivided interest owned by him his homestead at the date of the signing of the contract. The facts were known to appellant at the time. A tenant in common can acquire a homestead right in the common property. Clements v. Lacy, 51 Tex. 150; Jenkins v. Volz, 54 Tex. 636. The occupancy of the house by C. K. Walker and his wife,

in which he also owned an undivided interest, in conection with his father and sister, in the circumstances detailed, notwithstanding that it was also the house of his father and sister, constituted it his home also within the meaning of the homestead law and was sufficient to create a homestead right in the wife to the undivided interest, which could not be sold without her consent. Chief Justice PLEASANTS dissents from this conclusion on the ground that, under the facts stated, the residence was the home of W. G. Walker, the father, and C. K. Walker and his wife were merely living there with his father's permission and could not in this way acquire homestead rights in his undivided interest in the land. We all agree that, if the homestead right had not been acquired by this residence and was not existent at the time of the execution of the contract, it could not be acquired by C. K. Walker's subsequent intention, after he and his wife left the house, to build and occupy a home on the land; nothing having been done towards carrying such intention into effect, and no preparation made to carry out such intention.

[6] If the property was the homestead of C. K. Walker and his wife at the time of his execution of the contract, the wife not having joined therein, the contract was void and did not afterwards become valid and enforceable by their ceasing to occupy the home on the land; no other home having been acquired. Stallings v. Hullum, 89 Tex. 431, 35 S. W. 2. The fifth assignment of error is overruled.

Even if the letter introduced in evidence from A. R. Walker to W. G. Walker be considered sufficient to authorize W. G. Walker to sell A. R. Walker's interest in the land, it is clear that W. G. Walker did not act under this authority, nor did appellant suppose that he was doing so. It is clear that it was intended that A. R. Walker should act for himself. Having refused to sign the contract was not binding on him. Hill v. Conrad, 91 Tex. 345, 43 S. W. 789.

None of the remaining assignments of error need be discussed. Except as disposed of by what we have already said, they are overruled. For the errors indicated, we are of the opinion that the judgment should be reversed, and the cause remanded, with instructions to the trial court to enter the proper decree against W. C. Walker, C. W. Walker, and L. M. Walker, decreeing specific performance by them, and each of them, as to the respective undivided interest in the land embraced in the contract, making proportionate abatement in the purchase money provided in the contract, and it is so ordered. The judgment as to the other defendants refusing such decree is affirmed. It follows from the views of Chief Justice PLEASANTS, as stated, that in his opinion the judgment should be reversed and remanded, with

the same instructions also as to C. K. Walker and his wife, Riller Walker.

Affirmed in part. Reversed and remanded in part, with instructions.

PLEASANTS, C. J., dissenting.