## RETTIG et al. v. WEST END REALTY CO. et al. (No. 8050.)

(Court of Civil Appeals of Texas. Galveston. June 15, 1921. Appellants' Motion for Rehearing Denied April 20, 1922. Appellees' Rehearing Granted April 27, 1922.)

**1. Homestead ⚷143—Permission to son to occupy house on homestead does not give him a homestead while father lived.**

Where the surviving husband continued to reside on the homestead and never relinquished any specific or definite portion thereof, but merely permitted his son to live in a house which the son had built thereon, the son did not acquire a homestead interest in the land while his father lived.

**2. Homestead ⚷140—Right of survivor to occupy homestead excludes homestead claim by another.**

The right of the surviving husband to exclusive occupation of the homestead for his life, given by Const. art. 16, § 52, prevents the acquisition of homestead rights in the same land by another.

**3. Descent and distribution ⚷84—Conveyance held to include interest inherited from brother as well as that inherited from mother.**

A conveyance reciting the grantor was the sole heir of his mother and purporting to convey all his right in the described land, being an undivided one-half interest inherited from his mother, conveys all the interest of the grantor in that land, which was less than a half interest, though a part of such interest he inherited from his brother; it not being limited to the interest which the grantor received from his mother.

On Motion for Rehearing.

**4. Appeal and error ⚷265(1)—Trial court's findings not attacked are binding on appellate court.**

The findings of the trial court which are not attacked are binding upon the Court of Civil Appeals.

**5. Tenancy in common ⚷45—Warranty deed held to convey stated acreage from grantor's undivided interest.**

A warranty deed of an owner of an undivided interest in a tract of land conveying three acres thereof, being one acre each off the north end of the surveys for himself and for two of his sisters, and it appearing the parties had attempted to agree on a partition of the property and had drawn a plan for that purpose, but had never carried the purpose into effect, and also that the two sisters had authorized the grantor to convey one acre from each of the tracts to pay the taxes, conveyed, in view of the general warranty, an undivided three-acre interest from the interest owned by the grantor; it being ineffective to convey any part of the interest owned by his sisters.

**6. Tenancy in common ⚷55(6)—Survey and map held admissible as means of identifying land conveyed.**

Where a deed executed by an owner of undivided interest in the tract of land purported to convey portions of each of the tracts set off to the grantor and to his two sisters, a survey and map made for the purpose of a voluntary partition of the land, which was never carried into effect, were admissible and sufficient to identify the land described by the deed.

**7. Tenancy in common ⚷45—Purchaser from one cotenant can have tract of which possession was taken if no prejudice results to others.**

Where a deed executed by an owner of an undivided interest in a tract attempted to convey a specified portion of the tract, and the purchaser took possession under the deed and made valuable improvements, the purchaser is entitled to the portion so conveyed if it is less than the portion to which her grantor was entitled, and the entire tract was of substantially equal value except for the improvements, so that no prejudice would result thereby to the grantor's cotenants.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Trespass to try title between Minnie Rettig and others and the West End Realty Company and others. From a judgment awarding to the West End Realty Company the interest in the land claimed by it, Minnie Rettig and others appeal. Affirmed.

Stewarts and R. W. Houk, all of Houston, for appellants.

Andrews, Streetman, Logue & Mobley, of Houston, for appellee West End Realty Co.

Louis Campbell & Nicholson, of Houston, for appellee Jenkins.

GRAVES, J. This cause is an action in trespass to try title affecting 50 acres of land in the A. C. Reynolds league in Harris county, Tex., composed of two separate tracts of 25 acres each and known respectively as the John Harris tract and the Harry Harris tract.

On this appeal Minor Stewart and Mrs. Minnie Rettig and husband complain of a judgment denying recoveries, pursuant to deeds under which they claimed, as follows:

To Stewart of an undivided 3-acre interest in the John Harris tract; to the Rettigs of an undivided 5-acre interest in both tracts.

As to the John Harris tract, the questions raised turn, in connection with the trial court's fact findings touching it, upon what effect should be given a deed the material recitations of which are these:

"The State of Texas, County of Ft. Bend.

"Know all men by these presents that I, Taylor Harris, only child and sole heir of Martha Harris, deceased, and her husband, John Harris, residents of Ft. Bend county, Tex., for and in consideration of the sum of $1,000 to me in hand paid by John T. Tullock, resident of Harris county, Tex., the receipt of which I hereby acknowledge and confess, have granted, sold, and conveyed, and by these presents do grant, sell, and convey, unto the said John T. Tullock, resident of Harris county, Tex., all of my right, title, and interest, being an undivided one-half interest inherited as sole heir of Martha Harris, deceased, in and to the following described land and premises lying and being situated in Harris county, Tex., about 4½ miles southwest from the courthouse in the city of Houston, and being a part of the A. C. Reynolds league in Harris county, Tex., and being described as follows, to wit: 25 acres of land [describing the John Harris tract by metes and bounds]."

This instrument was not executed or joined in by Taylor Harris' wife, but was signed and acknowledged by him alone before a notary public at Sugurland, in Ft. Bend county, November 27, 1909.

About nine years later, in November, 1918, Taylor Harris and his wife duly executed and acknowledged deeds to an undivided 3 acres of the John Harris tract to Minor Stewart and to undivided 5-acre interests each in it and the Harry Harris tract to Mrs. Rettig.

On November 27, 1909, at the time of making this quoted deed to Tullock, Taylor Harris had not inherited from his mother 12½ acres, as it recites, but then only actually owned therein 7.81 acres, 6¼ acres of which he had inherited from his mother, and the balance from his brother Milton. Title under Tullock to 7/81 acres undivided interest in this tract subsequently passed down into the West End Realty Company, one of the appellees herein, and so vested by the judgment here appealed from.

Appellants contend that this deed from Taylor Harris to Tullock, under which the appellee realty company so holds, was invalid because the grantor's wife did not join in its execution, and because it was the homestead of the two at the time; further, in any event, that by its terms only the 6¼-acre interest actually inherited by Taylor Harris from his mother passed to Tullock.

The court below stated further pertinent fact findings as follows:

"(A) I find as a fact, in accordance with the written agreement of the parties, that the John Harris 25-acre tract was purchased by John Harris and wife, Martha Harris, in the year 1879, and was the community property and homestead of John Harris and his wife, Martha Harris; that John Harris and wife lived on the 25-acre tract, making it their homestead until her death, and John Harris continued to live on the tract, asserting the right of use and control over same and making it his homestead until his death, which occurred in 1918, after the filing of this suit.

"(B) It having been agreed by the parties that John Harris and wife, Martha Harris, were the common source of title for all parties claiming any interest in the John Harris tract, it is only necessary to follow the title from that source down to the point of controversy. When Martha Harris died in 1900, she left surviving her only two children, Milton Harris and Taylor Harris, and her husband, John Harris. She died intestate. Milton Harris married and died about 1905, intestate, after the death of his mother, leaving as his only heirs his wife, Lavenia, his brother, Taylor, and his father, John Harris. There is no evidence that Milton lived on the land in controversy or that his wife ever acquired a homestead interest therein.

"(C) Taylor lived on the land, having built a small house thereon before his mother's death, with John's consent, but because John would not permit him to cultivate enough ground to furnish him a living Taylor and his wife moved to Ft. Bend county and farmed there a number of years, though returning to the house on the John Harris tract after making his crop and remaining there until time to return to Ft. Bend county for another crop year. He was in Ft. Bend county at the time of the execution of the deed in controversy, the date thereof being November 27, 1909, and in said deed Taylor recites himself to be a resident of Ft. Bend county, Tex. The acknowledgment was taken in Ft. Bend county.

"(D) Taylor Harris and wife now life on the John Harris tract. He first lived there in 1879, at which time he built the house above mentioned, in which to live, he being married at that time. He and his wife lived there about twelve years, when she died, and two or three years later Taylor married again, and, as already indicated, went to Ft. Bend county to farm.

"(E) He made a number of trips to Ft. Bend county for this purpose, staying away sometimes a year, sometimes two years, and coming back between times to the house on the John Harris tract. When he went to Ft. Bend county he farmed for a living. He always left in the house on the John Harris tract some chairs, stoves, and other furniture. When he returned to the house on the John Harris tract he would stay two or three months sometimes, and sometimes he would not stay more than a month. John Harris did not deprive Taylor Harris of the use of the house at any time. Then he would go back to Ft. Bend county and put in another crop. He owned no land in Ft. Bend county. After the death of his father in 1918, Taylor Harris moved into his father's house on the John Harris tract. Before coming back he had been living on White Lake on

a place owned by a man named Radford, in Ft. Bend county. He had been renting from Mr. Radford, working on shares.

"(F) Taylor never abandoned his claim to the house on the John Harris tract as his home, and he states that he built it for a home, and, so far as Taylor could affect the matter by intention, I find that subsequent to his mother's death his father, John Harris, continued to live in the old home on the John Harris tract until his (John Harris') death, and that the John Harris tract was controlled by him until his death, and that he (Taylor Harris) occupied and used only such part of it as John Harris let him use.

"(G) And he further stated, and I find it to be a fact, that the restriction of the amount of ground Taylor Harris could use to be less than he could make a living on was the reason for his leaving and going to Ft. Bend county to make a living.

"(H) I find as a fact that John Harris was not willing for Taylor Harris to have enough land for him to make a living on in the John Harris tract until his (John Harris') death, and that during all his lifetime John Harris asserted that this tract was his to do as he pleased with.

"(I) John did not at any time allow to Taylor any specific or definite tract or portion of the John Harris 25 acres, but did permit Taylor to live in the house he had built on the land.

"(J) I find that at the date of the deed by Taylor Harris to Tullock, Taylor Harris was the only living one of two children that had survived his mother, Martha Harris, and Taylor Harris owned and claimed as heir of his mother 6¼ acres undivided interest in the John Harris tract. He also had inherited a further interest upon the death of his brother, Milton, making up the undivided interest claimed by Houston West End Realty Company."

Upon the effect of the deed to Tullock, as against the objections thus raised, the court below stated this conclusion of law:

"I hold upon the findings of fact that Taylor Harris acquired no homestead interest in any part of the John Harris tract prior to his deed to Tullock, and that such deed was valid and conveyed 'not less than the amount of land claimed thereunder by Houston West End Realty Company, to wit, 7.81 acres, notwithstanding Taylor Harris' wife had not joined in said deed. This holding is predicated upon the constitutional provision, under which John Harris, the community survivor, had the right to live upon and use as his homestead the entire 25-acre tract during the remainder of his life, and I hold as a matter of law that until John Harris relinquished this homestead right, in whole or in part, no other homestead right could be attached to said land, his right under the Constitution being exclusive so long as he desired to have it remain exclusive."

Appellants insist that the homestead feature of this holding is erroneous, and that the constitutional provision invoked (article 16, § 52, Constitution of Texas) has no application, because, they say, John Harris and his wife, Martha Harris, did in fact before the

death of the latter relinquish a part of their 25-acre tract to their son, Taylor Harris, and his wife, who at that time with John Harris' consent built themselves a home thereon; that the homestead rights of Taylor Harris and wife accordingly became so fixed and vested before the death of John Harris' wife, Martha, as not to be susceptible of destruction by the operation of this constitutional provision that "on the death of the husband or wife the homestead shall not be partitioned among the heirs during the lifetime of the survivor, or so long as the survivor may elect to use or occupy it as a homestead," etc., since it could only in any event become effective after Martha Harris' death, and would not then operate retroactively.

The argument further is that, as Taylor Harris was not attempting to acquire his mother's interest in the homestead contrary to the wishes of his father, this constitutional rule did not stand in the way, and the father and son could both have homestead rights in the same tract of land at the same time.

[1] We think the net effect of the trial court's quoted findings, which are in no way attacked, is that John Harris during his lifetime never relinquished his use and control for his own homestead purposes of any specific or definite portion of his 25 acres, but at all times retained and asserted such right to the whole of it, merely permitting his son, Taylor, to live in a house he had built thereon, and that Taylor never in fact acquired a homestead interest in the land while his father lived. There being no pretense that this finding lacks support in the evidence, it becomes binding upon appeal and renders the proposition appellants make here abstract.

[2] However, on the facts as detailed, we think the court's holding that Taylor Harris acquired no homestead interest prior to his deed to Tullock, and that John Harris' homestead right was, under article 16, § 52, of our Constitution, exclusive, is not only correct, but fully sustained by the following authorities: Hudgins v. Sansom, 72 Tex. 229, 10 S. W. 104; Johnson v. Taylor, 43 Tex. 121; Grothaus v. De Lopez, 57 Tex. 670; Adair v. Hare, 73 Tex. 273, 11 S. W. 320 et seq.; Hampton v. Gilliland, 23 Tex. Civ. App. 87, 56 S. W. 572; Loessin v. Washington, 23 Tex. Civ. App. 515, 57 S. W. 990.

In the Hampton v. Gilliland Case this court, on a situation in effect very similar to that presented here, held that the homestead right must rest upon a tenure more substantial than that which the recited facts show Taylor Harris to have had in the house and land upon which his father was so living. This holding was later reiterated in the Loessin v. Washington Case. .

[3] The other claim that the recitations of

Taylor Harris in this deed limits the amount of land that passed to such interest as he had previously inherited from his mother, while not without much force, was also, we conclude, rightly determined adversely to appellants. The language used seems to indicate that the purpose and intent was to convey an undivided one-half interest, or an undivided 12½ acres, in a specifically described 25-acre tract of land, rather than to restrict what should pass to such interest only as had come to the grantor from his mother.

The deed contained a general warranty, and it seems more reasonable to hold that the title thereby passed out of Taylor Harris to all the land he owned in the 25-acre tract he so described by metes and bounds, not to exceed an undivided one-half thereof. For analogous authorities applying this view to after-acquired titles, see Ruling Case Law, vol. 8, pp. 1059, 1060, pars. 111 and 112.

Under these conclusions, the disposition made in the judgment appealed from of the John Harris tract must remain undisturbed.

The issues affecting the Harry Harris tract were thus summarized by the trial court:

"This reduces the acreage in controversy in the Harry Harris tract to 3.58 acres. This controversy is between Minor Stewart and Mrs. Minnie Rettig, on the one hand, and Mrs. Theresa Jenkins, on the other. It arises upon the construction of a deed made by John Harris to Agnes Dow, of date August 7, 1908, reading as follows:

" 'The State of Texas, County of Harris.

"Know all men by these presents that I, John Harris, of Harris county, state of Texas, for and in consideration of the sum of $210 to me in hand paid, and receipt of which is hereby acknowledged, have granted, bargained, sold, and conveyed, and by these presents do grant, bargain, sell, and convey, unto the said Agnes Dow, a single woman, of Harris county, Tex., 3 acres of land out of the A. C. Reynolds league in Harris county, Tex., and being 1 acre each off of the north end of the 6¼-acre survey for John Harris and the 6¼-acre survey Phyllis Marshall (Harris) and the 6¼-acre survey Mahally Harris, the same being a subdivision of the said A. C. Reynolds league as per map and plat of said subdivision.

" 'To have and to hold. * * *

" 'Warrant and forever defend. * * *

" '[Signed]  John  X̽  Harris.' "
                      his
                      mark

Then followed detailed findings to the effect that a drawing found among John Harris' papers which evidenced an intended partition between himself, Mahally, and Abraham Harris, and Phyllis Marshall of this Harry Harris 25 acres into tracts of 6¼ acres to each of the four, that the partition itself was abandoned, but that the copied deed to Agnes Dow was made in view of and with reference to the drawing referred to, the drawing representing the survey mentioned in the deed;

that the 3 acres, in accordance with the description in the deed as aided by this drawing, had been occupied on the ground by Agnes Dow and her assigns; further, that John Harris, Phyllis Marshall, and Mahally Harris had agreed before this deed was executed that John Harris should sell one acre from each of their interests in order to pay taxes on all of their land, and that the Agnes Dow deed was made by him in pursuance of that agreement.

The court then predicated these legal conclusions on the facts so found:

"I hold as a matter of law that the deed from John Harris to Agnes Dow described and intended to convey the specific 3 acres off the northwest part of the Harry Harris tract by taking one acre from each of the 6¼-acre tracts referred to in said deed and appearing on the purported partition diagram found in the papers of John Harris.

"Consequently I hold further, in view of the warranty deed of John Harris to this specific acreage, that it is equitable to deduct 3 acres from the undivided interest of John Harris in the Harry Harris tract and appropriate same to make up the specific amount thus conveyed in his deed to Agnes Dow, and also to allot to Mrs. Jenkins upon her request the said specific 3 acres improved and occupied by her through her tenants.

"In this same connection, I hold that the deed of John Harris to Agnes Dow did not pass any title out of Phyllis Marshall or Mahally Harris, his sisters, notwithstanding the agreement to sell for payment of taxes, and I also hold that the record title to the property is not affected by said agreement."

Appellants attach these conclusions, contending that it conclusively appears that only one acre of John Harris' interest was intended to be thus conveyed, and we agree with that position. The terms of the deed, in the light of these attendant circumstances, seem to us to clearly indicate that this was the purpose and intent of all the parties concerned. The instrument should be so construed, and its effect limited accordingly. Smith v. Brown, 66 Tex. 543, 1 S. W. 573.

Nor do we think the covenant of general warranty had or should be given the effect of adding anything to what was intended by the grantor at the time to be passed, as·indicated by the other and conveying clauses of the deed. Flaniken v. Neal, 67 Tex. 629, 4 S. W. 212; Chace v. Gregg, 88 Tex. at page 559, 32 S. W. 520.

From what has been said it follows that so much of the judgment below as awarded to appellee Mrs. Theresa Jenkins an undivided 3-acre interest out of the Harry Harris tract, with direction that in the partition provided for it be made to apply to the specific 3 acres she had improved and occupied, must be reversed. It is so ordered. It further appearing that the facts touching the controversy over these several interests in question were fully developed, and that appellant Mrs. Min-

nie Rettig, under her deed hereinbefore referred to, is entitled to an undivided 2-acre interest in the Harry Harris tract, and Mrs. Theresa Jenkins to a like interest of one acre therein, judgment is here rendered that Mrs. Minnie Rettig recover an undivided 2 acres and Mrs. Theresa Jenkins an undivided one acre out of the Harry Harris 25 acres, and that the partition ordered below be modified to conform to that change.

Since it also appears that no complaint is made here of the adjudication to Minor Stewart of a 56-acre interest in the Harry Harris tract, and that, upon agreed motion by all the litigants affected, this court heretofore affirmed the judgment rendered by the district court in so far as it established the lien of E. C. Carr against the 1,575 acres decreed to Minor Stewart out of the John Harris tract, the judgment entered below is in all respects affirmed, except in the one particular next above specified.

Affirmed in part,

Reversed and rendered in part.

## On Motion for Rehearing.

At a former term this court affirmed the disposition made below of the John Harris tract, but reversed the award of an undivided 3 acres out of the Harry Harris tract to appellee Mrs. Jenkins and instead rendered its judgment in her favor for only an undivided one-acre interest in that tract, vesting the other undivided 2-acre interest therein in appellant Mrs. Minnie Rettig.

Both appellants and appellee Mrs. Jenkins have presented motions for rehearing, the former complaining of the affirmance as to the John Harris tract, the latter of the rendition against her as to the 2-acre interest in the Harry Harris tract.

Appellants criticize both features of our holding from which the affirmance noted proceeded; that is, that the deed from Taylor Harris to Tullock conveyed all the land he owned in the John Harris tract rather than such interest only as he had inherited from his mother, and that he then had no homestead interest in the tract.

In support of the claim that the homestead interest did attach in favor of Taylor Harris and his wife, the case of Massillon Engine & Thresher Co. v. Barrow (Tex. Com. App.) 231 S. W. 368, as well as the dissenting opinion of Judge Pleasants in Ward v. Walker, (Tex. Civ. App.) 159 S. W. 320, are now cited and relied upon. After an examination of both opinions, however, we conclude that, when applied to the facts here, controlling among which is John Harris' refusal to abandon any portion and his continued exercise until death of his individual homestead right in and possession of the whole 25 acres, they directly uphold our original determination.

Neither are we able to recede from the other conclusion that the deed to Tullock did not limit the amount of land that passed to such interest as Taylor Harris had previously inherited from his mother.

[4] The motion of appellants is therefore overruled. In deference to their request, it may be here affirmatively stated that the fact findings of the lower court, being unattacked, are binding upon and adopted by this court.

On the issue urged by the appellee Mrs. Jenkins that our former construction of the effect of the deed from John Harris to Agnes Dow was erroneous, we have become convinced that we were wrong.

We held in effect:

"It conclusively appears that only one acre of John Harris' interest was intended to be thus conveyed. The terms of the deed, in the light of these attendant circumstances, seem to us to clearly indicate that this was the purpose and intent of all parties concerned. The instrument should be so construed, and its effect limited accordingly."

[5] Re-examination of the terms of the deed itself, together with the extraneous facts in evidence, leads us now to the conclusion that it could not fairly be said that John Harris only intended to convey one acre so far as he was concerned, but that he meant to convey and to assume responsibility through his warranty for the passing of title to 3 acres of land, and that the recitation that it comprised one acre each off the subdivisions mentioned should be regarded as descriptive merely. There had then in fact been accomplished no such partition and, though not owning a specific 6¼ acres as he supposed or assumed, he did at that time actually own an undivided interest of more than 3 acres in the whole tract. Neither did the other tenants to whose interests he similarly refers own any such particular 6¼-acre tracts as he describes, their interest likewise being undivided in every acre of the whole, so that in these circumstances we think, if the description given is sufficient to lead to identification of a definite tract of 3 acres, and the segregation of that would neither exceed the share in the whole to which John Harris was entitled, nor prejudice the rights of the other joint owners, his deed should be given that effect.

[6] The survey and map referred to in the deed of a partition which was never consummated could in no way indicate the several interests owned in the tract by the persons named, but could and did furnish a ready means of identification of the three acres the grantor was conveying, and so were not only admissible, but were received in evidence for that purpose. It has been well said (Blackwell v. Scott [Tex. Civ. App.] 223 S. W. 338) that the office of description in a deed is not to identify the land, but to furnish means of identification, and, when this deed is consid-

ered in connection with the map, the location of the land called for upon the ground becomes at once definite and certain. Then the objection raised that this instrument was void as a conveyance because of insufficiency of description cannot be well taken.

[7] That John Harris did at the time own more than a 3-acre interest in the whole tract, as already recited, was undisputedly shown.

There only remains the inquiry whether the result of such a construction of John Harris' deed would be the infliction of any injury upon his co-owners. Here likewise the contrary effect appeared, it being admitted below by all parties that, aside from the improvements placed on the three acres by Agnes Dow and assigns, there was no difference in the value of the acreage throughout the 25-acre tract, and the trial court found it to be equitable, under all the facts, to allot to Mrs. Jenkins the specific 3 acres she so held,

We have concluded that the situation thus presented falls under the well-settled rule that, where a tract of land is of equal value throughout, a purchaser from one joint tenant of a distinct part of the whole who has taken possession of and made valuable improvements on the segregated part will be protected in the tenure, provided what is so appropriated does not exceed the share to which the cotenant's grantor was entitled and its being so set off to his vendee would work no prejudice to the rights of the other joint owners. Freeman on Cotenancy, § 205; Burleson v. Burleson, 28 Tex. p. 419; Arnold v. Cauble, 49 Tex. 533; Lasater v. Ramirez (Tex. Com. App.) 212 S. W. 936; Gosch v. Vrona (Tex. Civ. App.) 227 S. W. 220.

Further discussion is deemed unnecessary. The motion of appellee Mrs. Jenkins is granted, our prior judgment of rendition affecting the 3-acre interest is set aside, and the trial court's judgment is in all things affirmed.

Appellee's motion for rehearing granted, and trial court's judgment affirmed.