## C. W. HAMPTON ET AL. v. W. A. GILLILAND ET AL.

### Decided March 24, 1900.

**Homestead—Right Does Not Attach to a Remainderman, When.**

A married son continued to live with his parents on their homestead, but which they had conveyed to him by a deed reserving to themselves the entire possession during their lives. The father died, and then the son died before the death of the mother, who continued her homestead occupancy of the land, the son's family continuing to live there and pay her rent, until her death, after which there was an action to partition the land between the son's widow and children. Held that, as no homestead interest had attached in the son prior to his death, his widow was not entitled to such an interest in that land, but was properly decreed a homestead interest in an adjoining parcel of land, which had also formed part of the homestead of the parents and which they had conveyed to the son, her husband, by a different deed containing no reservation.

APPEAL from Grayson. Tried below before Hon. DON A. BLISS.

*Hamp P. Abney* and *Head, Dillard & Muse,* for appellants.

GILL, ASSOCIATE JUSTICE.—This is a suit in trespass to try title and for partition, brought by the appellants, Ila Hampton, joined by her husband C. W. Hampton, and Lora Simms, joined by her husband W. D. Simms, to recover of W. A. and Mary J. Gilliland and Mrs. Lee Gilliland and Mary Jessie Viars a two-thirds undivided interest in certain land in Grayson County, Texas. W. A. and Mary J. Gilliland, husband and wife, answered conceding the title of the entire property to be in appellants and appellee Mary Jessie Viars, subject to a homestead right in 200 acres thereof in favor of Mary J. Gilliland, and a one-third life interest therein as surviving widow of Hyter Viars, her first

husband to whom the property belonged in his own separate right. Mary Jessie Viars, being a minor daughter of Hyter Viars, deceased, and his wife Mary Jane Gilliland, answered in like manner, setting up her rights.

Mrs. Lee Gilliland, the other defendant, disclaimed and appears to have been dismissed upon her disclaimer, as she is not disposed of by the judgment. Trial was had without a jury, and as there is no statement of facts, the facts as found by the trial court are here set out in full:

"1.   John A. Viars and Mary Viars were husband and wife, and during their marriage purchased the land in controversy.

"2.   They had two sons, Hyter Viars and J. B. Viars, both of whom married. One of them, J. B. Viars, upon his marriage moved away from the parental roof and settled in Whitesboro. The other, Hyter Viars, after his marriage continued to live with his parents and on the land in controversy, together with his wife Mary, now Mary Gilliland, one of the defendants herein. The said Hyter Viars managed the home place, being the land in controversy, for his parents, who were advanced in age, and took care of them.

"3.   On November 5, 1877, the said John A. Viars executed and delivered to the said Hyter Viars a deed conveying to him, the said Hyter Viars, the 51⅓ acres tract of land in controversy absolutely.

"4.   On November 24, 1877, the said John A. Viars conveyed by deed to the said Hyter Viars the 100 acres tract of land in controversy, reserving an estate therein during the said John A. Viars' life.

"5.   On November 24, 1877, the said John A. Viars and his wife, Mary Viars, conveyed by deed to the said Hyter Viars the 160 acres tract of land in controversy, reserving to themselves 'the entire and uninterrupted possession' thereof during their lives.

"6.   All three of said tracts were situated together and constituted one body of land, though a road ran between the said 100 acres tract and the other two tracts; the house occupied by the said John A. Viars, his wife, Mary Viars, Hyter Viars and his wife Mary Viars, as a home, was situated on the 160 acres tract close adjoining to the said 100 acres tract. All of said tracts were fenced and in cultivation, being cultivated and managed by the said Hyter Viars. All of said deeds were in consideration of love and affection.

"7.   During the time the said Hyter Viars and his wife were living with the said John A. Viars, they had born unto them three girl children: Ila, who is now the wife of C. W. Hampton, both plaintiffs in this suit; Lora, who married J. D. Simms, and is now a widow and one of the plaintiffs; and Mary Jessie Viars, who is the minor defendant in this suit.

"8.   After the execution and delivery of said deeds, the said John A. Viars continued to pay the taxes on the 160 acres tract and the 100 acres tract up to the time of his death, which occurred in 1883.

"9.   After the death of John A. Viars, Hyter Viars and family continued to live with Mary Viars, his widow, until the death of said Hyter

Viars, which occurred about one year after the death of his father, John A. Viars. The said Hyter Viars, during this time, continued to manage said farm as he had done before, and had employed the defendant W. A. Gilliland to do the active work, the said Hyter Viars being in feeble health.

"10. After the death of the said Hyter Viars, his widow and children continued to live with Mary Viars, widow of John A. Viars, and the said Gilliland lived with them, he having rented the farm from the said widow of John A. Viars. After a year or so the said Gilliland married the widow of Hyter Viars, and they all continued to live together for a number of years in the said house on said land, the said Gilliland and wife taking care of Mary Viars, the widow of John A. Viars, and paying her rent for said land.

"11. Two years prior to her death, which occurred several years ago, the said Mary Viars, widow of the said John A. Viars, left her said home place and lived with her son J. B. Viars in Whitesboro. The said W. A. Gilliland, wife and family, consisting of the children of Hyter Viars, continued to live on said place; and the said Gilliland paid to the said Mary Viars, widow of John A. Viars, rent for said premises.

"12. Shortly after the death of said Mary Viars, two of the daughters of the said Hyter Viars married, Ila marrying the plaintiff Hampton, and Lora marrying one J. D. Simms, who died in February, 1899. After the marriage of Ila to the said Hampton, the said W. A. Gilliland put the said Hampton and wife in possession of a part of said 160 acres tract, said part being estimated as 53⅓ acres, which part the said Hampton and wife had cultivated ever since, paying no rent therefor to anyone. When the said Lora married the said Simms, the said Gilliland put her in possession of another part of said 160 acres tract, estimated to contain 53⅓ acres, which said part the said Simms and wife cultivated one year, paying no rent therefor, and then, they being dissatisfied with said parts, the said Gilliland put them in possession of another part of said 160 acres tract, containing the same amount of land, which said Simms and wife were cultivating at the time of his death. After the death of the said Simms, his widow, Lora, has continuously lived with her mother and the said Gilliland. The minor, Mary Jessie Viars, has always lived and still continues to live in the old family mansion of John A. Viars with her mother and the said Gilliland.

"13. The said Mary Gilliland, formerly widow of Hyter Viars, knew of the acts of the said W. A. Gilliland in putting the said Hampton and wife and the said Simms and wife in possession of said tracts, and consented thereto."

Upon the facts thus found the trial court adjudged to Mary J. Gilliland, as her homestead, 200 acres, including the 160 acres to which the mother of Hyter Viars held a life estate. It was further decreed that should she cease to use it as a homestead, it should be subject to partition among the children of Hyter Viars, subject to her life interest of one-third. The remainder of the land was ordered partitioned

among the appellants and Mary Jessie Viars, equally in accordance with their respective interests as disclosed.

Appellants complain that inasmuch as Hyter Viars died prior to the death of his mother, and during the existence of her life estate in the 160 acres tract, no homestead right accrued to him by reason of occupancy as tenant of his mother, and therefore his widow, now Mrs. Gilliland, could not properly assert a homestead right therein, and that the trial court erred in so holding.

Hyter Viars was remainderman as to the 160 acres tract, his mother having the absolute right to its use and possession during her life. Hyter Viars lived thereon as her tenant, and not by reason of his rights as remainderman, and his death occurring long prior to the death of his mother, his right of occupancy and possession did not accrue during his lifetime. He owned no estate therein to which the homestead right could attach during the life of his mother. At her death the 160 acres tract descended to his children free from the homestead claim of his widow, and subject only to her one-third interest for life accorded her by the statute. Crabtree v. Whitselle, 65 Texas, 111; Luhn v. Stone, 65 Texas, 439; see also Pressly's Heirs v. Robinson, 57 Texas, 453.

The mother of Hyter Viars, by reason of her right as life tenant, could have ousted Hyter Viars at any time, and could in like manner have excluded Gilliland and wife after his death. Such occupancy on their part was dependent entirely on her consent. The homestead right can not be based on so precarious a tenure, and must await a right to which it can attach in some substantial and permanent way. The death of Hyter Viars during the lifetime of his mother precluded such a possibility, and since his wife must claim her homestead rights through him, she can not be heard to assert such right in property to which he was powerless to assert a like right.

We are of opinion that the court erred in adjudging to Mrs. Gilliland and the minor, Mary Jessie Viars, a homestead in the 160 acres tract. The judgment will therefore be reversed, and here rendered decreeing to her, as her homestead, the 100 acres tract and the 53⅓ acres tract during her life, or until such time as she abandons it as such. A one-third life estate is also adjudged to her in the tract of 160 acres. The court below is directed to partition same equally among appellants and appellee Mary Jessie Viars, having due regard to the life interest of their mother; the part adjudged to her as her homestead to be subject to a like partition in case of abandonment.

*Reversed and rendered.*