AUGUST LOESSIN v. WILLIAM WASHINGTON ET AL.

Decided May 18, 1900.

**1. Homestead—Right of Heirs Held to Have Attached.**

At the death of the owner of a homestead tract of land acquired during the life of a deceased first wife by whom he had two sons, the second wife was left in possession. The sons, being married, moved upon the land with the intention of putting their interest therein to the homestead use, but, as the widow insisted upon her right to the use of the entire tract as her homestead, and as they were igno- rant of their rights to a partition, they paid her rent for a time, but eventually ob- tained the partition. Held, that their homestead right attached to the interest inherited from their mother, despite their payment of rent, and was not subject to the lien of a judgment obtained against them and duly recorded during the time they so paid rent.

**2. Same—Half Allotted to Widow Not Subject to Homestead Right of Heirs.**

The homestead occupancy by the sons of the lands set apart to them in the partition, and their intention to so occupy the other and adjoining one-half of the tract upon the termination of the widow's homestead life estate therein, could not suffice to impress the homestead right and character, in their favor, upon such other one-half, as it could not be subject to two distinct homestead rights at the same time.

APPEAL from Fayette. Tried below before Hon. H. TEICHMUELLER.

*Robson & Duncan,* for appellant.

*Brown, Lane & Garwood,* for appellees.

GILL, ASSOCIATE JUSTICE.—The appellees, William Washington and James Washington, brought this suit in July, 1898, for the purpose of enjoining the sale of certain real estate upon which the appellant, August Loessin, had levied an execution. The ground upon which the injunction was asked was that the property was the homestead of appellees, and therefore not subject to execution. The temporary injunction which had been granted by the court was, upon final hearing, perpetuated, and from this judgment Loessin has appealed.

There is no dispute about the facts, which may be thus briefly stated: Appellees, James and William Washington, and three other children younger than them, were the children of Peyton Washington by his first wife. The ninety-seven acres of land, a part of which is in controversy, was the community homestead of Peyton Washington and his first wife, and upon her death the latter, with his children, continued to occupy it as his home. He thereafter married a second time, and with his second wife and his children occupied it as a homestead until his death. He died intestate, as did also the first wife. Soon thereafter James, who was a married man at the date of his father's death and had not lived on the place, moved upon part of the tract with the intention of putting his interest therein to the homestead use. William married shortly after and moved thereon with a like purpose. The widow then asserted her

right to the use of the entire tract as her homestead, and James and William, being ignorant of their right to have the interest inherited by them from their mother partitioned to them, paid rent to the widow for the parts they had in use. James Washington, on account of some disagreement with his stepmother, left the place temporarily and during the years 1898 and 1899 rented land from another. In 1898 the children of the first marriage brought suit against their stepmother for partition, and succeeded in having one-half of the land set aside to them and partitioned among them, a life estate in the other half being adjudged to the widow with remainder to the children. The appellees also recovered in said suit the rental value of their respective interests from the date of their father's death.

In 1898 Gus Mehringer obtained a judgment against appellees and immediately took all the necessary steps to secure a judgment lien upon the interests of appellees in the property in controversy. This was done prior to the partition, and while they were paying rent to their stepmother.

The execution, the levy of which is the basis of this suit, was issued upon that judgment, and Loessin, the appellant, is the officer who made the levy.

Appellant concedes that James and William Washington, during the time they were occupying the property and seeking to acquire homesteads therein, had such an interest in the part subject to partition as was amenable to the homestead use, but it is urged that their ignorance of their rights and the payment of rents to the widow rendered them mere tenants of the widow, and their possession the possession of the widow and not their own. He therefore claims that the use was not sufficient to exempt the land to them as their homestead, and the lien having attached during such tenancy was not defeated by the subsequent partition. The trial court took the opposite view of the question presented, and his action is assigned as error.

We are of opinion that the assignment can not be sustained.

It is admitted that each of the appellees had such an interest in the tract of land as might have been subjected to the homestead use had they been aware of the nature of their rights. It is also undisputed that they went upon the land and used it with the distinct purpose of acquiring homesteads thereon. They could have done no more had they been fully advised of their rights, and we do not believe that the mere fact that they temporarily yielded to the wrongful demands of the widow and paid her rent should be held to defeat their claims which had been in all other respects made good. Intention and actual occupancy were seasonably followed by a successful suit for the enforcement of their rights. Intention and occupancy preceded the accrual of any lien under the judgment of Mehringer, and we are clear that the trial court correctly held their interest in the part partitioned to the heirs exempt from execution. Appellant cites no authority in support of his contention, and we are aware of none.

From the facts stated it appears that appellees have also an interest in the part now occupied by the surviving widow of Peyton Washington as her homestead, and upon this the execution was likewise levied. It seems to be conceded by appellees that this interest is subject to sale under the levy unless protected by their homestead claims established on their interest in the land subject to present occupancy by them and their purpose to put the remaining interest to a like use when the right of occupancy accrues. The question presented is, can the homestead claims of appellees attach to their interest as remaindermen in land to which their stepmother has the right of use and occupancy for life?

In Hampton v. Gilliland, 23 Texas Civil Appeals, ·87, the exact question was decided adversely to appellee's contention. No case was cited or found directly in point, but the cases of Crabtree v. Whiteselle, 65 Texas, 111, and Luhn v. Stone, 65 Texas, 439, were cited as bearing upon the question and tending to support the doctrine announced. In Crabtree v. Whiteselle, supra, the party seeking to avail himself of the homestead exemption inherited the land in question from his mother, who occupied it until her death and died intestate. He was not living upon the land at the date of her death, and after her death did no act prior to the levy which manifested an intention to use it as a homestead. He testified, however, to such an intent. The court in disposing of the question said: "Had he been occupying the land at the date of his mother's death, a continuation of such use and occupancy would be sufficient to protect it."

This and other expressions in the opinion present the idea that in addition to intention there must be some act evidencing that intent after the right to its use accrues. It is true that in that case he was not a remainderman and had no present interest of any kind in the property until his mother's death, while in the case at bar appellees have an interest in the fee subject only to its use and occupation by the widow during her life. Her right, however, to its use is exclusive and absolutely inconsistent with the homestead use by another. To uphold the contention of appellee would be to permit a homestead to be piled upon a homestead on the same land, a contention which seems to us manifestly untenable. It has been uniformly held that while the right of actual present possession is not absolutely necessary to the establishment of the homestead right, the right to such use and actual occupancy within a reasonable time after acquiring title and forming the purpose appears ⌐ to be essential. The very purpose for which the homestead exemption was created was to exempt, to the class intended to be benefited, a place on which to reside, free from the intrusion of creditors. Its nature implies not only the intent to occupy but the power to appropriate to the homestead use. Since intention in good faith to appropriate to the use proposed is indispensably necessary, the good faith of such intention must be measured by the possibility or probability of its execution. If this be true, there must clearly exist a reasonable certainty that the estate may be so appropriated within a reasonable time. While decisions

may be found which, by reason of peculiar facts, are apparently in conflict with this principle, we think the principle itself has been uniformly recognized. The exemption is not general for the purposes of trade or speculation, but to a particular use, and is not justified unless the property be suitable and capable of being applied to the use intended.

In Cameron v. Gebhard, 85 Texas, 617, many authorities are carefully reviewed, and while the court concluded that neither actual occupancy nor the absolute right to present possession were necessary, yet it was declared that intention alone could not give the homestead right. In that case the party asserting the right had bought a vacant lot with the proceeds of the sale of his former home. This purchase was made with the avowed intention of using it as such, and the owner proceeded at once to secure the erection of a residence on it. This was held to be sufficient as against a levy made prior to actual occupancy.

In the case at bar, if appellees could acquire a homestead in lands to which they held title in remainder, by reason of their dedication to such use of adjacent lands to which they held absolute title, then it would follow that, in the absence of their ownership in such other lands, they could acquire a homestead in their interest as remaindermen by the mere presence of an intention to do so when the surviving widow died or vacated. It is difficult to conceive how a person could entertain such an intention in good faith when its realization depended on the uncertain event of the death of the surviving widow or her voluntary surrender of the premises during the life of the claimant. It is impossible to understand how any practical preparation for such use could be made. If lumber should be purchased for its improvement it might go to decay before the right to improve accrued. Any other character of preparation evidencing such intent might prove equally futile.

In Gardner v. Douglas, 64 Texas, 79, it was held that a purchase of a place with the proceeds of sale of a former homestead, with the intention to use the purchased place as such, and followed within a reasonable time by actual occupancy, was sufficient to clothe it with the homestead character, even against a levy before actual occupancy. The postponement of actual occupancy was occasioned by the existence of a three months' lease of the premises at the date of purchase. An intention to use it for homestead purposes immediately on the expiration of the lease was clearly shown. We do not think that decision in conflict with the views here expressed. In that case the possibility of actual appropriation at a time certain, and that not unreasonably long after the formed intention, was clearly shown, and actual occupancy followed.

In Luhn v. Stone, supra, the claimant had possession, as independent executor and trustee, of a tract of land in which he had an interest as devisee under the will, but which he held in trust for his father during the latter's life. This possession continued a few days after the latter's death, during which time he held possession with the intent to subject his interest to the homestead use. This intent had also been coexistent with his possession as trustee or executor. Justice Stayton, in delivering

the opinion, forbore to sustain the homestead claim on the ground of the possession prior to the death of the father, but expressly based the decision on the few days' possession between the death of the father and the levy of the execution by the plaintiff. While the character and sufficiency of the possession prior to the father's death was not considered as necessary to the decision of the case, the intimation is that something more was thought to be necessary.

In the light of the cases cited we held, in Hampton v. Gilliland, that the homestead right could not attach to such an interest in land, and we have found no reason to change our views. We think the assignment of error assailing the action of the trial court in perpetuating the injunction as to appellees' interest in the half of the land occupied by their stepmother should be sustained, and that feature of the judgment is reversed and here rendered for appellant.

In all other respects the judgment is affirmed.

*Affirmed in part.*
*Reversed and rendered in part.*