Jordan, 69 Tex. 303, 6 S. W. 831, 5 Am. St. Rep. 53; Odem v. School District (Tex. Com. App.) 234 S. W. 1093. An examination of these cases will reveal that the parties at whom inquiry was directed were undertaking to hold at the same time more than one civil office under the state. We do not find such to be the record in the instant case.

Having determined that relator's contentions cannot be upheld, he is remanded to the custody of the sheriff to abide the judgment heretofore rendered by the district judge of the Sixty-Sixth judicial district of Texas.

---

EWING v. RILEY et al.   (No. 6821.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 8, 1922. Rehearing Denied Jan. 3, 1923.)

1. Homestead ⬅216—Whether homestead located in or adjacent to unincorporated town is rural or urban is a fact question.

Where the home of the person claiming the exemption is located within or adjacent to an unincorporated town, the question of whether it is a rural or urban homestead is one of fact, to be determined from its location with reference to the settled portions of the town, the nature and character of the property, the uses to which it is put, and like determinations.

2. Homestead ⬅60—Character of homestead in, or adjacent to incorporated town determined by city limits.

Where a home, when acquired, is adjacent to or within an incorporated town or city, the character of homestead is determined by the location of the city limits; if without, it is rural; if within, urban.

3. Homestead ⬅60 — Location of mansion house determines character of homestead where land claimed only partly within incorporated limits.

If land claimed as a homestead lies partly within and partly without city limits, the location of the mansion house determines the character of the homestead, and that portion on the opposite of the line from the home site is no part of the homestead.

4. Homestead ⬅31—Land not shown to be homestead.

Where land was purchased to resell in smaller tracts but purchaser at no time actually resided on it or on land owned by him, but had his actual residence on leased premises, nor had he erected improvements thereon or made preparations therefor, and never had intention of improving it to make it his home, and never intended doing so in the future, it was not his homestead.

5. Homestead ⬅60 — Foundation of rural homestead is the dwelling.

The foundation of the rural homestead is the dwelling or "mansion house," and the land and improvements are a part only, because they are incident to the mansion house and yield sustenance to the family dwelling therein.

6. Homestead ⬅31—Not essential that at purchase of land as homestead there be a residence thereon.

It is not essential that at the time of purchase of land intended as a homestead there must be a home residence thereon, but, if the residence is not on the land at time of purchase, those seeking to, claim exemption must have a present intention to build thereon within a reasonable time.

On Motion for Rehearing.

7. Homestead ⬅70—Home site may be on tract segregated from balance of land claimed.

If the home site is on a tract segregated from the balance of the land on which exemption is claimed, that fact does not affect the homestead claim so long as the two tracts are together used for homestead purposes.

8. Homestead ⬅33—Claimant's possession of land on which he resided not sufficient to impress homestead character on adjoining land.

Where purchaser of land, which was intended to be resold in smaller tracts, purchased an adjoining lot in which vendor retained a lien and possession until the note given therefor should be paid, and purchaser never entered into possession under deed to him, but was a tenant of vendor, his possession and occupancy of the leased land was not such as would enable him to impress homestead character on the first tract, which was bought for speculation, and which he never intended to improve and occupy as a homestead.

Appeal from District Court, Hidalgo County; Norman B. Kittrell, Special Judge.

Action by John W. Ewing against George I. Riley and another. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

McDaniel & Bounds, of McAllen, for appellant.

D. F. Strickland, of Mission, and Gordon Griffin, of McAllen, for appellees.

SMITH, J. The judgment appealed from was based upon the conclusion of the court below that the land in controversy was the homestead of G. I. Riley, the record owner thereof, and therefore not subject to attachment by a creditor. This holding presents the only material question in the case. If the property was in fact the homestead, the judgment must be affirmed; if it was not, the judgment must be reversed.

The record shows that prior to March, 1920, John W. Ewing owned and farmed a tract of 60 acres of land lying adjacent to, but wholly without, the corporate limits of the city of McAllen, in Hidalgo county. About this time there was a building boom in McAllen, resulting in extending the settled resi-

dential section to the city limits adjoining Ewing's property. In response to the apparent opportunity, Ewing had his 60 acres surveyed and cut up into blocks and lots, streets and alleys, and platted into "Ewing's addition to the city of McAllen." The arrangement of the blocks, lots, streets, and alleys was made to conform to the general plan of the adjacent city. About this time Ewing sold to George I. Riley, in two transactions, about two-thirds of the property, amounting to a little more than 40 acres. In the deeds of conveyance the property was described, not as acreage, or by metes and bounds, but by blocks and lot numbers, and these instruments contained certain building restrictions usual to modern urban residence additions, in which, among other restrictions, was a prohibition against the erection of dwellings costing less than $3,000, and requiring that such dwellings should not be erected unless the plans thereof were first approved by Ewing. When, under these conveyances, Riley obtained possession of the property, he proceeded at once towards placing it upon the market for sale. He had the plat of the addition recorded, thus dedicating it. He tore down the fences which had inclosed it. He covered up the irrigation ditches which traversed it, and leveled off its surface. He laid off and marked the lots and blocks with painted stakes. He had printed 150 abstracts of the title to the property, as well as a like number of blank "earnest money" contracts, each covering "lot ———, block———, Ewing's addition," etc. He even entered into a contract to pave some of the streets across the property. He offered the lots for sale, and sold a number of them. The building boom soon abated, however, and the anticipated demand for Riley's lots did not materialize substantially, and so, in the winter of 1920, and spring of 1921, he planted and cultivated crops on part of the land, using the balance for pasture purposes. In the early spring of 1921 he began negotiations for the sale of the land in bulk, and on April 26 entered into a contract for its sale to one Kincaid, in which the land was described, not as acreage, but as blocks and lots in the Ewing addition, and incorporated in the contract and subsequent deed the building restrictions embraced in the conveyance to him, as he had done in the sale of the several smaller tracts he had sold off. He then moved with his family to South Dakota, where they had other interests. Riley and his family, at no time actually lived upon the land in controversy, or upon any property owned by him. He and his family, on the contrary, dwelt in houses rented from others, a part of the time several blocks distant from, and the balance of the time on a block adjoining, his own property. There were, in fact, no improvements upon his own land in controversy here.

Now, when Riley purchased the first batch of lots from Ewing, he paid only part of the consideration in cash, giving vendor's lien notes for the balance. But, when he purchased the other batch of lots, he paid all cash therefor, and these lots comprise the property here involved. Riley defaulted in the payment of the notes due upon the first purchase, and Ewing sued upon these notes and for foreclosure of the vendor's lien, and in the same action procured a writ of attachment upon the second batch of lots. In the trial, judgment was rendered for the debt, and for foreclosure of the vendor's lien, but denying foreclosure of the attachment lien, upon the ground that the property attached constituted Riley's rural homestead. From this judgment Ewing, the lienholder, brings this appeal.

[1-3] The first question presented is whether the land in controversy was rural or urban, whether it constituted Riley's urban homestead, or rural homestead. In our view of the case, it is unnecessary here to decide this question, and we do not expressly do so, unless, indeed, such decision is made when we declare the rule to be that, where the home of the person claiming the exemption is located within or adjacent to an unincorporated town or village, the question of whether it is a rural or urban homestead is one of fact, to be determined from the location of the premises with reference to the settled portions of the town, the nature and character of the property, the uses to which it is put, and like considerations (Iken v. Olenick, 42 Tex. 195; Nance v. Johnson, 84 Tex. 401, 19 S. W. 559); whereas, if the home, when acquired, is adjacent to or within the defined limits of an incorporated town or city, the character of the homestead is determined by the location of the corporate limits. If the home is without such limits, it constitutes a rural homestead; if within, it is an urban homestead. If the land claimed as a homestead lies partly within and partly without the city limits, then the location of the dwelling or "mansion house" determines the character of the homestead, and that portion of the land lying upon the opposite side of the line from the home site constitutes no part of the homestead, and is not exempt, since no homestead may be invested with the dual character. Iken v. Olenick, supra; First Nat. Bank v. Jones, 244 S. W. 1057, decided by this court on November 1, 1922.

[4] We are of the opinion, however, that under the facts as we have stated them, as disclosed in the record, the land in controversy was not shown to be the homestead of the Rileys. As stated, they at no time actually resided upon the land, or upon any land owned by them. They had their actual domicile upon other premises, which they leased for that purpose from others. They not only did not erect any house or dwelling place or any sort of improvements upon the land, but never made any preparations to that end;

and, so far as the record shows, they never had any intention of improving the premises for the purpose of making their home thereon, or for any other purpose, and never intended doing so at any time in the future. On the contrary, Riley testified that he intended ultimately to sell out the property "in smaller tracts," and his whole course of conduct indicated that this was his sole purpose in purchasing the property from Ewing.

[5] Of course, the question of whether or not a given premises constitutes a homestead is primarily one of fact, to be determined from the circumstances of the individual case. But the courts have laid down certain fundamental rules for the determination of the fact, which may be readily stated. In the first place, the foundation of the rural homestead is the dwelling or "mansion" house in which the family finds shelter not only as a protection against the ravages of the elements, but as a haven of refuge and rest and peace from misfortunes as well. The 200 acres of land, the fields, the woods, the crops, the other improvements thereon, constitute a part of the homestead only because they are incident to the mansion house, and yield sustenance, and comfort, and pleasure, to the family dwelling therein.

[6] It is not essential that at the time of the purchase of land intended as a homestead there must be a home residence thereon. But, if the residence is not at the time on the land, those seeking to claim the exemption must have a present intention to build thereon within a reasonable time, and must take such steps, and make such preparations, in such manner, within such time, and to such an extent "as to manifest beyond doubt the intention to complete the improvements and reside upon the place as a home." Franklin v. Coffee, 18 Tex. 413, 70 Am. Dec. 292; Iken v. Olenick, 42 Tex. 195; Railway v. Winter, 44 Tex. 597; Brooks v. Chatham, 57 Tex. 31; Johnson v. Burton, 39 Tex. Civ. App. 249, 87 S. W. 181; Dinwiddie v. Tims, 52 Tex. Civ. App. 72, 114 S. W. 400. In speaking of the rural homestead, Chief Justice Hemphill, in the case first cited, said:

" * * * There must be a homestead over which the Constitution may throw its shield, and not land merely, upon which the owner may or may not put his cabin, mansion, or improvements, and claim as a home. A homestead necessarily includes the idea of a house for residence or mansion house. On town or city lots it cannot exceed a certain value. But on the rural homestead there is no such restriction. The dwelling may be a splendid mansion, or a mere cabin or tent, open to the winds and rains of heaven. If there be either, it is under the protection of the law; but there must be a home residence before the 200 adjoining acres can be claimed as a homestead. * * * Nor would it be necessary to secure the exemption, that a house should be built or improvements made. But there must be a preparation to improve, and this must be of such a character and to such an extent as to manifest beyond doubt the intention to complete the improvements and reside upon the place as a home."

The showing made by appellee in this case by no means meets the tests prescribed by Judge Hemphill in the foregoing, for, in addition to the concession that the premises on which Riley claimed an exemption had no dwelling house or other improvements upon it, and that the family dwelt on a different tract of land belonging to another, it was conclusively shown that Riley had made no preparations to build on the property, and in no manner evinced any intention of ever building or residing thereon. The proof was equally positive that he had no such intention at any time, and he in terms admitted on the stand that it was his ultimate intention to sell off the property in blocks and lots, as platted.

The judgment will be reversed, and, if this were the only question in the case, we would render judgment here for appellant. But the rights of Kincaid, who purchased from Riley, were not ascertained or expressly adjudicated below, and for that purpose the cause will be remanded.

Reversed and remanded.

On Motion for Rehearing.

In the original opinion in this cause it was stated Riley at no time actually resided upon the land in controversy, or upon any property owned by him, but on the contrary, had his actual dwelling place upon other premises which he leased for that purpose from others. Appellee vigorously questions this finding of fact.

The tract of land seized under a writ of attachment, and upon which Riley claimed the homestead exemption, consists of blocks 9 to 15, inclusive, of Ewing's addition to McAllen, which he had purchased from Ewing and paid for in cash. There were no improvements on this property. At the same time he purchased these blocks he also purchased block 16, adjoining, which he did not pay for, but gave his note therefor, to secure which the vendor's lien was retained by Ewing against that block. There was a dwelling house on this block. It was expressly stipulated in the deed conveying block 16 that Ewing, the vendor, should retain possession of the premises until the note was fully paid. This note was not paid by Riley, the lien was foreclosed, the land sold, and accordingly Riley never went into possession of block 16 under or by virtue of the deed to him. However, Riley entered into a supplemental contract with Ewing, the vendor, who was still in possession, whereby he leased block 16 and the dwelling thereon, for which he agreed to pay a rental of $50 a month. Under this lease contract Riley moved with his family into the dwelling on September 11, 1920. It was further expressly stipulated in

the contract that Riley "recognizes" Ewing as his landlord, and that he was to occupy the premises only as a tenant of Ewing, and that the period covered by the lease should terminate on January 11, 1921, at which time Riley agreed to surrender possession back to Ewing. The record does not show when Riley surrendered possession under his lease, but it does affirmatively show that Ewing foreclosed his lien upon block 16, which was sold to a third party, and Riley's assignable interest therein was thus entirely concluded when this sale occurred is not shown. It is not even shown whether it occurred before or after the attachment levy upon blocks 9 to 15. It was not shown what new arrangement was made by the parties at the end of the lease period, but the record warrants the assumption that Riley at no time occupied the premises on block 16 under his deed, but only as a tenant in virtue of his lease thereof from Ewing. It was upon this state of the record that we based the statement in the original opinion that Ewing never resided upon the premises in controversy, or upon any land owned by him, but, on the contrary, actually had his domicile on premises not owned by him, but rented from others. The issue is the controlling one in this case.

[7] The fact that Riley did not actually dwell upon the premises here in controversy did not of itself serve to exclude those premises from the homestead exemption, although appellee seems to place such construction upon our holding in the original opinion. If the home site happens to be situated on a tract segregated from the balance of the land on which the exemption is claimed, that fact does not of itself affect the homestead claim, so long as the two tracts are together used for homestead purposes. And so, if Riley actually had such interest in block 16, on which he resided, as would support his claim for exemption, and from there operated his farm on blocks 9 to 15, and claimed and utilized all as his homestead, then the exemption would cover all, regardless of the segregation. The only question presented here is whether or not Riley had such interest in block 16, the home site, as would support his claim of exemption.

As has been shown, Riley never resided on block 16 as the purchaser or owner thereof, but only as a tenant paying a monthly rental therefor, and subject to eviction at any time he defaulted in any of the several obligations imposed upon him in the lease contract. Ordinarily, as the purchaser of the property under an executory contract, he could have gone into possession and exercised dominion over the premises for all purposes, subject only to the vendor's equitable title. But, under the express terms of the contract of purchase, his right of entry was postponed, to ripen only upon his payment in full of the purchase price, a condition which he never performed. Of course, if under his contract of purchase as distinguished from his lease contract he had gone into possession for the purpose of making the premises his home site, the fact that the lien to secure the purchase price was outstanding would not have impaired or affected the homestead character thus sought to be impressed upon the premises, and, in the case of a rural homestead, this character would automatically extend to all the land used by the claimant as a part of, or incident to, the family use, so long as the whole did not exceed 200 acres. But he never obtained that character of possession.

[8] We do not think Riley's peculiar possession and occupancy of block 16 was such as would enable him in virtue thereof to impress the homestead character upon the adjoining blocks 9 to 15, which he purchased solely as a speculation, and which he never intended to improve or occupy for homestead purposes. Franklin v. Coffee, 18 Tex. 413, 70 Am. Dec. 292; Hampton v. Gilliland, 23 Tex. Civ. App. 87, 56 S. W. 572; Loessin v. Washington, 23 Tex. Civ. App. 515, 57 S. W. 990; Roberts v. Trout, 13 Tex. Civ. App. 70, 35 S. W. 323. We do not think it was intended under the homestead provision to exempt any land, whether attached to the home site or not, unless it was the intention of the one claiming the exemption to actually make and use such land as a part of the homestead premises. In this case no such intention was shown to exist in Riley with reference to blocks 9 to 15, and in our opinion he was not entitled to the exemption upon those blocks.

The motions for rehearing are overruled.