## BRYSON v. PROVIDENT NAT. BANK OF WACO, TEX. (two cases).

(Circuit Court of Appeals, Fifth Circuit. November 22, 1924.)

Nos. 4292, 4293.

Homestead ⟊31—Purchasers who remained in possession of other land, without preparation to appropriate purchased land as a homestead, did not acquire homestead.

Purchasers, who expressed an intention to make purchased land their homestead, but who for three years resided elsewhere and leased land to others, without making preparation to appropriate it as homestead, were not entitled to homestead rights therein, under Const. Tex. art. 16, §§ 50, 51, and Rev. St. Tex. arts. 3785, 3787.

Petitions to Superintend and Revise Rulings of the District Court of the United States for the Western District of Texas; Duval West, Judge.

In the matter of the bankruptcy of N. P. Bryson and of R. M. Bryson. On petitions by bankrupts to superintend and revise rulings of the District Court, sustaining exceptions of the Provident National Bank of Waco, Tex., to bankrupts' claims of exemption of certain property under the homestead laws of the state of Texas. Affirmed.

John B. McNamara and J. D. Williamson, both of Waco, Tex., for petitioners.

W. M. Sleeper, of Waco, Tex. (W. M. Sleeper and Sleeper, Boynton & Kendall, all of Waco, Tex., on the brief), for respondent.

Before WALKER and BRYAN, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge. N. P. and R. M. Bryson, father and son, filed their petitions in voluntary bankruptcy on December 1, 1922, and therein claimed certain real property as exempt under the homestead laws of the state of Texas. The trustee reported the property as exempt, and thereupon the Provident National Bank of Waco, Tex., opposed the report, upon the ground that said premises had never constituted the homestead of the bankrupts, for the reason same had never been occupied or appropriated as such by the plaintiffs. The exceptions of the bank were sustained by

the referee, and on hearing before the District Judge the ruling was affirmed. Claimants have appealed to this court for review, and the only question involved seems to be as to whether or not the bankrupt had ever, in good faith and seasonably, begun preparations to reside upon the property in compliance with the Texas law.

Succinctly stated, the facts disclosed by the record are as follows: The claimants owned jointly and were living upon a certain tract of land in McLennan county, Tex., which they sold for $22,000. This was on November 30, 1919. They thereafter rented this same property (the Stiles place) from the purchaser for the year 1920. January 26, 1920, they purchased the property now involved, which adjoined the Stiles place, aggregating 261¼ acres, and paid thereon $15,000, leaving a balance of $8,500 due. They took their respective wives to look at the property and announced their intention to make it their homestead. At the time of the purchase there were two old houses upon the land, in very bad state of repair, scarcely fit for habitation, but which have since the purchase been occupied by tenants. They owed considerable money, including the debt to the bank, and applied some of the funds realized from the sale of the Stiles place thereon. They rented the newly purchased property during 1920 to third persons, but poor crops were made by all, and nothing appears to have been collected on the rent. They continued to rent the Stiles place for their own use during 1921 and 1922, and to lease their own property to others. The Brysons informed the president of the defendant in error that they intended to sell the property and apply part of the proceeds upon the bank's debt; it was placed in the hands of a real estate agent at a price of $125 per acre, and to the date of trial before the referee had not been taken out. Claimants also informed this agent, Haney, that they "wanted to keep it [the Stiles place] as long as [they] could rent it." On December 1, 1922, both Brysons filed their petitions in bankruptcy.

In extenuation, the claimants swore they made only enough to live on from the Stiles place, and were therefore unable to make the necessary improvements to occupy the property as a homestead. The only acts indicating a purpose to make the property a homestead appear to have been the making of a few repairs on the barn and an expressed intention to that end made to outsiders. In other words, for three years the property had been owned and rented to other persons, and the claimants had continued to lease and live upon the Stiles place.

The law of Texas covering the matter is found in the Constitution and statutes of Texas as follows: Article 16, section 50, of the Constitution provides:

"The homestead of a family shall be, and is hereby protected from a forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead; nor shall the owner, if a married man, sell the homestead without the consent of the wife, given in such manner as may be prescribed by law."

Section 51 of the same article provides:

"The homestead, not in a town or city, shall consist of not more than 200 acres of land, which may be in one or more parcels, with the improvements thereon. * * * Any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired."

Article 3785 of the Revised Statutes:

"The following property shall be reserved to every family, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as hereinafter provided: 1. The homestead of the family."

Article 3787 of the Revised Statutes:

"The proceeds of the voluntary sale of the homestead shall not be subject to garnishment or forced sale within six months after such sale."

The Court of Civil Appeals of Texas has had occasion many times to construe these provisions, and among the most recent decisions is that of Ewing v. Riley, 246 S. W. 94, in which that court said:

"It is not essential that at the time of the purchase of land intended as a homestead there must be a home residence thereon. But, if the residence is not at the time on the land, those seeking to claim the exemption must have a present intention to build thereon within a reasonable time, and must take such steps, and make such preparations, in such manner, within such time, and to such an extent 'as to manifest beyond doubt the intention to complete the improvements and reside upon the place as a home' [citing numerous authorities]. In speak-

ing of the rural homestead, Chief Justice Hemphill, in the case first cited [Franklin v. Coffee, 18 Tex. 413, 70 Am. Dec. 292] said: '* * * There must be a homestead over which the Constitution may throw its shield, and not land merely, upon which the owner may or may not put his cabin, mansion, or improvements, and claim as a home. A homestead necessarily includes the idea of a house for residence or mansion house. On town or city lots it cannot exceed a certain value. But on the rural homestead there is no such restriction. The dwelling may be a splendid mansion, or a mere cabin or tent, open to the winds and rains of heaven. If there be either, it is under the protection of the law; but there must be a home residence before the 200 adjoining acres can be claimed as a homestead. * * * Nor would it be necessary to secure the exemption, that a house should be built or improvements made. But there must be a preparation to improve, and this must be of such a character and to such an extent as to manifest beyond doubt the intention to complete the improvements and reside upon the place as a home.' "

And again in Parker v. Cook, 57 Tex. Civ. App. 238, 122 S. W. 422:

"It has been repeatedly held by the courts of this state that intention alone is not sufficient to impress upon unoccupied premises the homestead character [citing numerous authorities]. We think the true rule deducible from the adjudicated cases is not that intention alone, under all circumstances, is insufficient to constitute a homestead dedication, but that in each instance the intention must not only be bona fide, but must be accompanied by some conduct or some overt act on the part of the claimant that may justly be considered reasonable diligence in carrying into execution the intention to actually use and occupy the premises for some of the purposes of a home. The legal functions of the overt act, or conduct, which it is said should accompany the intention in order to impress the homestead character upon unoccupied premises, are not solely to show the bona fides of the intention, but to manifest the exercise of reasonable diligence to put that intention into effect by actually using the premises as a home in the manner contemplated by the Constitution. It must be borne in mind that the real object of this provision is to extend the exemption only to premises used for some of the purposes of a home, and not to exempt a designated amount of realty [citing authorities]."

2 F. (2d)—53

Also Cameron & Co. v. Gebhard, 85 Tex. 614, 22 S. W. 1034, 34 Am. St. Rep. 832:

"In Franklin v. Coffee, 18 Tex. 413, Chief Justice Hemphill, delivering the opinion said: 'Nor would it be necessary to secure the exemption that a house should be built or improvements made. But there must be a preparation to improve, and this must be of such a character and to such an extent as to manifest beyond a doubt the intention to complete the improvements and to reside upon the place as a home.' Again, in the same case, it is said: 'In this case there was no house or home upon the land. The plaintiff had not resided there before or since his marriage. He had made no preparation or done no acts which would evince a fixed intention and purpose to select and appropriate the place as a home.' The facts in that case justified the conclusion that there was no homestead, but the court announced a rule which has been followed in all subsequent cases. These principles enunciated in that case have been recognized and applied by this court in the cases of Moreland v. Barnhart, 44 Tex. 280; Railway v. Winter, 44 Tex. 611; Barnes v. White, 53 Tex. 631; Brooks v. Chatham, 57 Tex. 33; Swope v. Stantzenberger, 59 Tex. 390; Gardner v. Douglass, 64 Tex. 76; Archibald v. Jacobs, 69 Tex. 251; Dobkins v. Kuykendall, 81 Tex. 183, and many other cases."

From the above citation of authorities and clear expressions of the Supreme Court of Texas upon the point that intention alone is not sufficient to support a claim to a homestead, but that it shall be accompanied by reasonably prompt and bona fide acts and preparations to so appropriate the property, we are bound to agree with the court below that the facts in the present case do not sustain appellants' contention.

There appeared no definite purpose to occupy the premises as such, and if they could remain off of it for three years, with no more preparation to appropriate it as a homestead than was made in this instance, we see no reason why they could not have continued that course for ten years or longer. On the other hand, in order to sustain the right, we think there must have been some actual preparation, prosecuted with such diligence as the circumstances permitted, and within a reasonable time after acquisition of the property; otherwise the intention alone could not avail. What constitutes due diligence and a reasonable time must necessarily depend upon the circumstances of each case as it arises. We have

examined the decisions cited by appellants, and, without finding it necessary to review them here, have found none, where the facts were at all similar to those in the present instance, sustaining the right to the homestead.

The ruling of the court below is therefore affirmed.